FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

04 DEC 30  PM 4:30

OFFICE OF THE CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID W. WILLIAMS; SUSAN D. WILLIAMS; JOHN A. WILLIAMS; CHERYL A. WILLIAMS; DRAKE-WILLIAMS STEEL, INC.; D.W. SERVICES, INC.; FABRISERVICE, INC.; J.W. SERVICES, INC.; STRUCTURAL STEEL SERVICES, INC.; JFH REALTY ADMINISTRATIVE SERVICES, INC.; FABRI-SERVICES, INC. (n/k/a COMPLETE STEEL SERVICES, INC.); FABSTEEL, INC.; WILLIAMS FAMILY FARM I, LC; WILLIAMS FAMILY FARM II, LC; WILLIAMS FAMILY FARM III, LLC; WILLIAMS FAMILY FARM IV, LLC; on behalf of themselves and others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> GRANT THORNTON INTERNATIONAL; GRANT THORNTON, L.L.P.; ALLEN R. DAVISON II; and BI SERVICES OF AMERICA, LLC; <br><br> Defendants. | CASE NO.  04 CV  646 <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, David W. Williams, Susan D. Williams, John A. Williams, Cheryl A. Williams, Drake-Williams Steel, Inc., D.W. Services, Inc., Fabriservice, Inc., J.W. Services, Inc., Structural Steel Services, Inc., JFH Realty Administrative Services, Inc., Fabri-Services, Inc. (n/k/a Complete Steel Services, Inc.), Fabsteel, Inc., Williams Family Farm I, LC, Williams Family Farm II, LC, Williams Family Farm III, LLC, and Williams Family Farm IV, LLC, by their attorneys, McGrath North Mullin & Kratz, PC, LLO, and Cline, Williams, Wright, Johnson

& Oldfather, L.L.P., and for their class action complaint against Defendants Grant Thornton International and Grant Thornton, L.L.P. (collectively, "Grant Thornton"), Allen R. Davison II ("Davison"), and BI Services of America, LLC (collectively, the "Defendants"), state and allege as follows:

1.      Plaintiffs bring this action, seeking in excess of $1,000,000 in compensatory damages plus punitive damages and other relief against the Defendants who provided the Plaintiffs with negligent, reckless, improper, extreme, wanton and incomplete tax planning, tax advice, tax return preparation, accounting and financial advice and services, and legal advice and services, all of which advice, services and tax shelters will collectively be described herein as the "Tax Strategies".

2.      Plaintiffs allege that the Defendants, and each of them, are liable to the Plaintiffs and the Class (as defined later herein) for breach of fiduciary duty, fraud, negligent misrepresentation, professional malpractice, professional negligence and conspiracy to breach fiduciary duty. Plaintiffs seek damages for the amount that Plaintiffs will incur or have incurred to pay a new set of advisors to rectify the damages incurred as a result of the Tax Strategies; plus the taxes, interest and penalties the federal and applicable state tax authorities will assess with respect to the Tax Strategies, estimated to be at least $1,000,000; plus punitive damages for Defendants' negligent, reckless, improper, extreme and wanton conduct that not only damaged Plaintiffs but was also flagrantly against the public interest; plus a declaratory judgment that Defendants shall be liable to Plaintiffs for the amount of taxes, interest and penalties assessed against the Plaintiffs by the federal and applicable state tax authorities, and the other damages and relief stated herein; plus disgorgement of the fees charged by Defendants to Plaintiffs for the Tax Strategies; plus compensation for other damages sustained; plus attorneys' fees and costs.

3.     From 1998 to 2001, and at all times relevant hereto, Plaintiffs realized substantial income and profits from the operations of Drake-Williams Steel, Inc. and its affiliated entities (named as Plaintiffs herein), on which they fully expected to pay federal and applicable state taxes.

4.     Defendants used their knowledge of Plaintiffs' finances, operations and activities and their well-known reputations as tax and accounting experts to convince the Plaintiffs that the Tax Strategies would reduce, defer or eliminate federal and applicable state taxes. Defendants' advice, services and recommendations have proved disastrous for Plaintiffs, who paid thousands of dollars to the Defendants, in reliance on the Defendants' tax and accounting expertise and reputations, only to receive erroneous, negligent, reckless, improper, extreme, wanton and incompetent advice that has exposed Plaintiffs to audits and investigations by federal and state tax authorities and substantial tax liabilities, including interest and penalties, and prevented Plaintiffs from availing themselves of legitimate tax savings opportunities in the years 1998 through 2001.

5.     Defendants lured Plaintiffs into the Tax Strategies with their well-known reputations as tax and accounting experts, and by (a) promising the Plaintiffs legitimate tax avoidance, tax reduction or tax deferral over several years; (b) promising the Plaintiffs the Tax Strategies were legal and legitimate; (c) promising the Plaintiffs that they would receive first class tax, legal, financial and accounting advice, services and assistance in implementing, performing, recording and reporting the transactions encompassed by the Tax Strategies; and (d) promising the Plaintiffs that the Defendants were the only tax, financial, legal and accounting advisors that the Plaintiffs would ever need. Plaintiffs paid the Defendants thousands of dollars, and on information and belief, the Defendants reaped millions of dollars in fees from many other Class Members (as defined later herein) who were clients of the Defendants, all of whom were

3

enticed into implementing the Tax Strategies by the Defendants. The Defendants knew or should have known the Tax Strategies were negligent, unsupported, reckless, improper, extreme and wanton tax planning ideas, which were unsupported by the Internal Revenue Code of 1986, as amended ("Code"), and related tax authorities.

      6.    Defendants' wrongful, unlawful, negligent, reckless, unsupported, extreme and wanton actions with respect to the Tax Strategies occurred in part through its advice and services to the Plaintiffs and the Class Members in which Defendants:

     a.    Recommended and utilized unsupported income allocations;

     b.    Recommended and utilized unsupported and substantial management fee allocations among affiliated entities;

     c.    Recommended and utilized unsupported expense allocations;

     d.    Recommended and utilized affiliated company payables and receivables that could never be repaid;

     e.    Recommended and utilized entity structures with no books, records or purpose;

     f.    Recommended and utilized corporations, ESOPs, Roth IRAs, limited liability companies, and partnerships, all designed to avoid income tax without sufficient legal, business or factual support;

     g.    Failed to adequately or competently implement, perform and institute the steps, actions, documents, books or records that were necessary or appropriate to accomplish the Tax Strategies;

     h.    Provided the tax returns to the Plaintiffs only one to two days prior to the final extension due date thereby allowing the Plaintiffs no time to review the tax returns, question the action taken on the tax returns or the tax or other advice received from the Defendants or to understand the numbers reported by the Defendants on the tax returns.

     i.    Making and endorsing the statements contained in their oral advice and tax returns prepared by the Defendants and other services and advice rendered or which should have been rendered in connection with the Tax Strategies.

      7.    The Internal Revenue Service ("IRS") has determined or will determine that allocations, deductions, deferrals, affiliated entities, losses and other tax benefits (collectively,

the "Tax Benefits") resulting from the Tax Strategies should not be allowed; that taxable income relating to the Tax Strategies was not accurately reported for the tax periods ending in 1998 through 2001; and that Plaintiffs' tax liability was therefore substantially understated on the tax returns prepared and signed by the Defendants (or their employees) for the taxable periods ending in 1998 through 2001. Thus, upon either the IRS' assessment of income tax deficiencies or the Plaintiffs' filing of amended tax returns for 1998 through 2001 with the IRS and the applicable state tax authorities, Plaintiffs will have to pay the taxes supposedly sheltered by the Tax Strategies and the IRS and the applicable state tax authorities will impose statutory interest and likely penalties, amounting to millions of dollars.

8.      Defendants either knew or should have known from the outset that the Tax Strategies would not succeed and were not supported by the Code and related tax authorities.

9.      Grant Thornton claims its client service teams have the breadth and depth of federal tax, state and local tax, international tax, family wealth planning, and compensation and benefits expertise to meet individuals' and companies' compliance and specialty tax service needs, all supported by its national office in Illinois.

10.      Grant Thornton and Davison claim their effective tax and related planning strategies can help individuals and companies select a course towards continued growth and profitability. Grant Thornton and Davison also claim they offer practical solutions to federal and state tax issues and solutions designed to minimize individuals' and companies' federal and applicable state tax liabilities.

11.      On information and belief, after an investigation by the IRS into other tax improprieties by Grant Thornton, the IRS began to investigate the Tax Strategies.

12.      The Plaintiffs became acquainted with Grant Thornton and Davison in 1995 as a result of a strong recommendation by a well-known Omaha, Nebraska lawyer who also used

Grant Thornton and Davison as his tax, financial and accounting advisors.  Defendants (other than BI Services of America, L.L.C.) were engaged by the Plaintiffs to provide tax advice and services in 1995.  Sometime in 1997, Grant Thornton and Davison became the sole tax, financial, accounting, and in all practical aspects, the legal advisors and providers of professional accounting and tax services (a "one-stop" shop) for the Plaintiffs.  In the fall of 2001, Davison left Grant Thornton.   Thereupon, BI Services of America, LLC ("BI Services"), which on information and belief, is owned or controlled by Davison, began providing the same services to the Plaintiffs through or at the direction, supervision and control of Davison.  Because Grant Thornton, and in particular Davison in Grant Thornton's Kansas City, Missouri office, were trusted fiduciaries of the Plaintiffs and their business and had a well-known reputation for tax and accounting expertise, and because Grant Thornton and Davison had access to Plaintiffs' confidential financial information, they were aware that Plaintiffs would each realize significant taxable income in the years 1998 through 2001.  During the period including 1998 through 2001, Grant Thornton, Davison and BI Services exploited this knowledge and their positions as trusted fiduciaries by aggressively and improperly advising the Plaintiffs that they could greatly reduce or eliminate their income tax liabilities by implementing the Tax Strategies.

13.     As stated in more detail below, the Defendants abused their position of trust by collecting thousands of dollars in fees from the Plaintiffs and millions of dollars in fees from the Class by recommending and implementing the Tax Strategies to reduce the Plaintiffs' taxes and the Class Members' taxes when the Defendants knew or should have known the Tax Strategies were negligent, reckless, unsupported, improper, ineffective, extreme and wanton.

14.     In the years 1998 through 2001, none of the Defendants retracted their representation or advice to Plaintiffs regarding the propriety of the Tax Strategies or advised them to amend their tax returns relating to such years.

15.     The Plaintiffs were informed they were the subject of an IRS investigation in the Fall of 2001. Davison continued to represent the Plaintiffs during the IRS investigation and assured the Plaintiffs that the Tax Strategies would withstand scrutiny.  In late Spring of 2003, after engaging independent counsel, Plaintiffs became aware that the Tax Strategies were very questionable and upon advice of such counsel, terminated Davison's representation of the Plaintiffs in the IRS investigation.  Consequently, Plaintiffs learned that, among other things, Defendants had: (a) taken thousands of dollars of fees from Plaintiffs for advice and services with respect to the Tax Strategies which Defendants knew or should have known to be improper, negligent, reckless, ineffective, unsupported, extreme and wanton; (b) prepared inaccurate tax returns for the Plaintiffs that will cause Plaintiffs to incur liabilities for substantial taxes, possibly penalties and interest; (c) failed to advise Plaintiffs to amend their tax returns; and (d) forced Plaintiffs to incur the expense of hiring additional tax, accounting and legal advisors to rectify the damages caused by the implementation of the Tax Strategies.

## PARTIES

16.     Plaintiffs David W. Williams and Susan D. Williams are husband and wife and are individuals and citizens of Nebraska.

17.     Plaintiffs John A. Williams and Cheryl A. Williams are individuals and citizens of Nebraska. During the period 1998 through 2001, John A. Williams and Cheryl A. Williams were married and filed joint income tax returns.  At the present time, John A. Williams and Cheryl A. Williams are not husband and wife.

18.     Drake-Williams Steel, Inc. is a Nebraska subchapter S corporation, with its principal place of business in Omaha, Nebraska.

19.     D.W. Services, Inc., Fabriservice, Inc., J.W. Services, Inc., Structural Steel Services, Inc. and JFH Realty Administrative Services, Inc., are corporations formed under the

7

laws of Nevada with their principal place of business in Omaha, Nebraska.

20.     Fabsteel, Inc. and Fabri-Services, Inc. (n/k/a Complete Steel Services, Inc.) are corporations formed under the laws of Nebraska with their principal place of business in Omaha, Nebraska.

21.     Williams Family Farm I, LC, Williams Family Farm II, LC, Williams Family Farm III, LLC, and Williams Family Farm IV, LLC are limited liability companies formed under the laws of Iowa with their principal place of business in Omaha, Nebraska.

22.     On information and belief, Defendant Grant Thornton International, Inc. is one of the world's largest accounting, consulting, tax and financial services firms, with thousands of employees with locations in 110 countries, and locations in nearly 49 United States cities including Kansas City, Missouri, with its national and worldwide headquarters and principal place of business in Chicago, Illinois.  On information and belief, Grant Thornton International, Inc. is a corporation incorporated in the State of Illinois.

23.     On information and belief, Defendant Grant Thornton, L.L.P. is a member of Grant Thornton International, Inc. and has hundreds, if not thousands, of employees in the United States and 49 offices in the United States including Kansas City, Missouri.  Grant Thornton International, Inc. has its headquarters and principal place of business in Chicago, Illinois, and is organized and exists pursuant to the laws of the State of Illinois.  On information and belief, Grant Thornton, L.L.P. is a federally authorized tax practitioner and is a firm that includes accountants licensed by the state of Missouri and other states.

24.     On information and belief, Defendant Allen R. Davison II was at all times material hereto a certified public accountant and a federally authorized tax practitioner and until the fall of 2001, was a partner of Grant Thornton, L.L.P., in its Kansas City, Missouri office. Davison was also, at all times material hereto, an attorney licensed by the Nebraska State Bar

8

Association. On information and belief, Davison is a citizen of Kansas. Until the fall of 2001, Davison acted in the course and scope of employment with Grant Thornton. On information and belief, after the fall of 2001, Davison acted in the course and scope of employment with BI Services.

25.     On information and belief, Defendant BI Services is a Nevada limited liability company with its principal office in Kansas City, Missouri. Upon information and belief, BI Services is owned and/or controlled by Davison. Davison and BI Services provided professional advice, accounting services and tax services to the Plaintiffs, beginning sometime during late 2001, in connection with the Tax Strategies.

26.     On information and belief, Grant Thornton and/or Davison directed current and former employees of Grant Thornton to provide legal services for the Plaintiffs notwithstanding the various codes of professional responsibility that preclude lawyers from practicing in multi-disciplinary firms and that prohibit lawyers from being controlled by non-lawyers.

27.     The Plaintiffs relied on and trusted the Defendants (or persons working for or with them) for the preparation of the necessary, appropriate and legitimate corporate documents, employee stock ownership plan documents, summary plan descriptions, appraisals, contracts, resolutions, minutebooks, Roth IRA documents, and all other necessary records, entries and documentation to effect the Tax Strategies. Plaintiffs also trusted and relied on the Defendants to timely and competently prepare or implement the necessary and appropriate legal documents and records relating to the formation, implementation and operation of certain employee stock ownership plans that purportedly owned two service related "S" corporations upon Davison's recommendation: Fabri-Services, Inc. (now known as Complete Steel Services, Inc.) and JFH Realty Administrative Services, Inc.   Similarly, Plaintiffs also trusted and relied on the Defendants to timely and competently prepare or implement the documentation and records

necessary or appropriate to implement the Tax Strategies involving the use of the Roth IRAs, and related regular corporations owned by Roth IRAs (Fabriservice, Inc. and Structural Steel Services, Inc.), which Defendants promoted as the "G.I.F.T." strategy.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 due to diversity of citizenship of the parties and because the amount in controversy far exceeds $75,000.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1332 because the Defendants all are found, reside and/or transact affairs in this District; because a substantial part of the events or omissions giving rise to this action occurred in this District; and because one or more Defendants is found in and subject to personal jurisdiction in this District; because the ends of justice require that the parties residing in any other district be brought before this Court.

## CLASS ALLEGATIONS

30.     Plaintiffs bring this action on their own behalf, and pursuant to Rule 23(b)(1)(A), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of themselves and the nationwide class of all persons (the "Class Members," the "alleged class" or the "Class") who either: (a) consulted with, relied upon, or received oral or written opinions or advice, or had tax returns prepared by the Defendants or based on advice from the Defendants (or individuals or attorneys affiliated with or working for the Defendants) with respect to any one or more of the following acts or omissions of the Defendants:

    i.      Recommending and utilizing unsupported income allocations;

    ii.     Recommending and utilizing unsupported and substantial management fee allocations among affiliated entities;

    iii.    Recommending and utilizing unsupported expense allocations;

10

iv.      Recommending and utilizing  affiliated company payables and receivables that could never be repaid;

v.      Recommending and utilizing entity structures with no books, records or purpose;

vi.      Recommending and utilizing corporations, ESOPs, Roth IRAs, limited liability companies, and partnerships, all designed to avoid income tax without sufficient legal, business or factual support;

vii.      Failing to adequately or competently implement, perform and institute the steps, actions, documents, books or records that were necessary or appropriate to accomplish the Tax Strategies;

viii.      Providing the tax returns to the Plaintiffs only one to two days prior to the final extension due date thereby allowing the Plaintiffs no time to review the tax returns, question the action taken on the tax returns or the tax or other advice received from the Defendants or to understand the numbers reported by the Defendants on the tax returns;

ix.      Making and endorsing the statements contained in their oral advice and tax returns prepared by the Defendants and other services and advice rendered or which should have been rendered in connection with the Tax Strategies.

and/or (b) filed with any federal or state tax authority a tax return in which any Tax Strategy was implemented or reported, and the legal representatives, heirs, successors, and assigns of all persons described in (a) and (b) above. The "Class" includes without limitation, the individuals, partnerships, limited liability companies, trusts, corporations, retirement plans, ventures, and any other entity that the Defendants advised, formed, or utilized in any one or more of the Tax Strategies for the Plaintiffs or the Class. The "Class" excludes, however, any person described above who has already released all claims against the Defendants so long as such release was not procured by fraud, duress or economic coercion.

31.      The Plaintiffs and the Class Members each and all have tangible and legally protectable interests at stake in this action.

32.      The claims of the Plaintiffs and the Class Members have a common origin and share a common basis. The claims of all Class Members originate from the same negligent,

11

reckless, unsupported, improper, extreme and wanton Tax Strategies recommended by the Defendants.

33.     The Plaintiffs state a claim for which relief can be granted that is typical of the claims of the Class Members. The individual Plaintiffs are willing and prepared to serve as the Class Representatives (as defined below) for the victims of the same Tax Strategies.

34.     If brought and prosecuted individually, each of the Class Members would necessarily be required to prove the instant claim upon the same material and substantive facts, and upon the same remedial theories and would be seeking the same relief as the Plaintiffs.

35.     The claims and remedial theories pursued by the Plaintiffs are sufficiently aligned with the interests of the Class Members to ensure that the universal claims of the alleged class will be prosecuted with diligence and care by the Plaintiffs as representatives of the Class.

36.     The Class Members are so numerous that joinder of all members is impracticable. Based upon information and belief, the Defendants engaged in hundreds, if not thousands, of transactions similar or identical to the Tax Strategies for hundreds, if not thousands, of persons.

37.     There are questions of law and fact common to the alleged class. Such common questions include, *inter alia*:

    a.    Whether Defendants conspired and/or aided and abetted each other in furtherance of the improper and unlawful acts alleged herein;

    b.    Whether Defendants breached their fiduciary duties to the Plaintiff and the Class;

    c.    Whether Defendants' overt and/or predicate acts in furtherance of a conspiracy and/or aiding and abetting proximately caused injury to the Plaintiffs' and Class Members' business or property or irreparably harmed the Plaintiffs and the alleged class and, if so, the appropriate relief to which they are entitled;

    d.    Whether Defendants' acts and practices constitute violations of applicable law for which Plaintiffs and the Class Members are entitled to recover restitution or damages or for which disgorgement of ill-gotten fees is appropriate;

    e.    Whether Defendants' actions constitute mail and wire fraud;

f.    Whether Defendants have breached applicable contracts with Plaintiffs and the Class;

g.    Whether Defendants have been unjustly enriched through the activities described herein;

h.    Whether Grant Thornton, Davison and BI Services (and the lawyers and accountants working at the direction of the Defendants) breached the applicable professional standard of care to the Plaintiffs and the Class in providing services and advice, including but not limited, to the Tax Strategies;

i.    Whether the documents and/or statements disseminated to the Plaintiffs and the Class omitted or misrepresented material facts about the Tax Strategies.

38.    Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to the action or could substantially impair or impede their ability to protect their interests.

39.    Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate final relief with respect to the Class as a whole. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the alleged Class which would establish incompatible standards of conduct for the party opposing the Class. Such incompatible standards, inconsistent or varying adjudications on what would be the same essential facts, proof and legal theories, would create and allow to exist inconsistent and incompatible rights within the Class. Further, the failure to permit this cause to proceed as a class action under Rule 23(b)(1)(A) would be contrary to the beneficial and salutary public policy of judicial economy in avoiding a multiplicity of similar actions. The Plaintiffs also allege that declaratory and injunctive relief are appropriate for the Class as a whole, making certification appropriate under Rule 23(b)(2). The Plaintiffs also allege that questions of law and fact applicable to the Class predominate over individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Therefore, certification is

13

appropriate under Rule 23(b)(3). Failure to permit this action to proceed under Rule 23 would be contrary to the public policy encouraging the economies of attorney and litigant time and resources.

40.    The individual Plaintiffs allege that they are willing and prepared to serve the Court and the proposed Class in a representative's capacity with all of the obligations and duties material thereto (the "Class Representatives").

41.    The self-interests of the named Class Representatives are co-extensive with and not antagonistic to those of the absent Class Members. The proposed Class Representatives will undertake to well and truly protect the interests of the absent Class Members.

## TOLLING AGREEMENT

42.    The individual Plaintiffs have engaged the services of counsel indicated below. Plaintiffs' counsel are experienced in complex class litigation and will adequately prosecute this action and will assert, protect and otherwise represent the named Class Representatives and absent Class Members.

43.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. There will be no difficulty in the management of this action as a class action.

44.    The individual Plaintiffs will fairly and adequately protect the interest of the Class and have no interests adverse to or which directly and irrevocably conflict with the interests of other Class Members.

45.    The Plaintiffs have entered into tolling agreements with Grant Thornton and Davison, copies of which are attached hereto and marked as Exhibits A and B and incorporated by reference as if fully set forth herein. Those agreements reflect the parties' agreement to toll any applicable statute of limitations with respect to extending the time to file this action.

14

## FIRST CLAIM
## (Breach of Fiduciary Duty)

46.     Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1 through 45, inclusive, as if fully set forth herein.

47.     The Defendants, as Plaintiffs' accountants and attorneys, were Plaintiffs' fiduciaries, and thus owed Plaintiffs the duties of honesty, loyalty, care and compliance in accordance with the applicable codes of ethics and professional responsibility.

48.     The Defendants breached these fiduciary duties to Plaintiffs by advising Plaintiffs to engage in the Tax Strategies, and to sign and file the tax returns prepared by the Defendants in reliance on said Defendants' reputations as tax and accounting experts, and by providing tax, accounting and legal advice and related services, which said Defendants knew or should have known to be improper, negligent, reckless, extreme and wanton.

49.     As a result of said Defendants' conduct set forth herein, Plaintiffs have suffered injury in that (a) they have paid Defendants thousand of dollars for advice and tax return preparation relating to the Tax Strategies; (b) have incurred or will incur millions of dollars in taxes, possibly penalties and interest as a result of implementing the Tax Strategies; (c) have and will continue to incur substantial additional costs in hiring new tax, accounting and legal advisors to rectify the damages caused by the implementation of the Tax Strategies; and (d) have foregone legitimate tax savings opportunities.

50.     The Plaintiffs and Class Members did not discover, nor could they reasonably have discovered, with the exercise of reasonable diligence, the claims for relief pled herein until shortly before the execution of the original tolling agreement between the Plaintiffs, Grant Thornton and Davison, attached hereto as Exhibits A and B.

51.     As a proximate cause of the foregoing, Plaintiffs have been injured in an amount to be proved but believed to be at least $1 million, and should also be awarded punitive damages

and the other relief set forth herein.

## SECOND CLAIM
### (Fraud)

52.     Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1 through 51, inclusive, as if fully set forth herein.

53.     In order to induce the Plaintiffs and the Class to pay them millions of dollars in fees, Defendants made numerous knowingly false affirmative representations and intentional omissions of material fact to Plaintiffs relating to the Tax Strategies, including but not limited to:

a.     Recommending and utilizing unsupported income allocations;

b.     Recommending and utilizing unsupported and substantial management fee allocations among affiliated entities;

c.     Recommending and utilizing unsupported expense allocations;

d.     Recommending and utilizing  affiliated company payables and receivables that could never be repaid;

e.     Recommending and utilizing entity structures with no books, records or purpose;

f.     Recommending and utilizing corporations, ESOPs, Roth IRAs, limited liability companies, and partnerships, all designed to avoid income tax without sufficient legal, business or factual support;

g.     Failing to adequately or competently implement, perform and institute the steps, actions, documents, books or records that were necessary or appropriate to accomplish the Tax Strategies;

h.     Providing the tax returns to the Plaintiffs only one to two days prior to the final extension due date thereby allowing the Plaintiffs no time to review the tax returns, question the action taken on the tax returns or the tax or other advice received from the Defendants or to understand the numbers reported by the Defendants on the tax returns;

i.     Making and endorsing the statements contained in their oral advice and tax returns prepared by the Defendants and other services and advice rendered or which should have been rendered in connection with the Tax Strategies.

54.     The above affirmative representations made by each said Defendant were false when made and said Defendants knew these representations to be false when made with the

intention that Plaintiffs rely upon them and enter into the Tax Strategies and pay them thousands of dollars in fees. In addition, the above omissions of material fact were made knowingly by said Defendants, also with the intent to induce Plaintiffs and the Class Members to enter into the Tax Strategies and pay them thousands, if not millions, of dollars in fees.

55.    By its affirmative misrepresentation and intentional omissions of material facts relating to the Tax Strategies, to the extent that the Defendants induced some or all of the Plaintiffs to enter into engagement letters that purportedly waived the Plaintiffs' right to a jury trial, such agreements are void, against public policy, invalid, revocable and unenforceable.

56.    In reasonable reliance on said Defendants' false representations and misleading omissions regarding the Tax Strategies, Plaintiffs paid thousands of dollars to Defendants for tax and legal advice, paid thousand of dollars in additional expenses to execute the Tax Strategies, did not avail themselves of legitimate tax savings opportunities, filed federal and state tax returns that reflected Tax Benefits resulting from the Tax Strategies and did not amend those tax returns, thereby subjecting the Plaintiffs to potential additional penalties and interest.   But for Defendants' intentional misrepresentations and material omissions described above and Grant Thornton's well-known reputation as tax and accounting experts, Plaintiffs would never have hired Defendants for advice or professional services, engaged in the Tax Strategies, claimed Tax Benefits on their income tax returns, filed and signed their tax returns as prepared by the Defendants, failed to amend their tax returns, and failed to avail themselves of legitimate tax savings opportunities.

57.    As a result of Defendants' fraud, Plaintiffs incurred and will continue to incur substantial additional costs in hiring new tax, accounting and legal advisors to rectify the damages caused by implementing the Tax Strategies.

17

58.     As a result of Defendants' conduct set forth herein, Plaintiffs have suffered injury in that they (a) have paid Defendants thousands of dollars for advice and tax return preparation relating to the Tax Strategies; (b) have incurred or will incur millions of dollars in taxes, possibly penalties and interest as a result of implementing the Tax Strategies; (c) have and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the damages caused by the implementation of the Tax Strategies; and (d) have foregone legitimate tax savings opportunities.

59.     Due to the wrongful concealment by the Defendants and each of them, the Plaintiffs did not discover, nor could they reasonably have discovered, with the exercise of reasonable diligence, the facts underlying the claims for relief asserted herein until shortly before the execution of the original tolling agreement between the Plaintiffs, Grant Thornton and Davison set forth at Exhibits A and B.  Due to the complex nature of the Defendants' wrongful, negligent, reckless, improper, extreme and wanton actions and omissions relating to the Tax Strategies, Plaintiffs have continued to learn of additional facts supporting its claim during the tolling period.

60.     As a proximate cause of the foregoing, Plaintiffs have been injured in an amount to be proved but believed to be far in excess of $75,000, and at least in the amount of $1 million, and should be awarded punitive damages and the other relief requested herein.

### THIRD CLAIM
### (Negligent Misrepresentation/Professional Malpractice)

61.     Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1 through 60, inclusive, as if fully set forth herein.

62.     As Plaintiffs' tax advisors, accountants and attorneys, the Defendants owed Plaintiffs a duty of care, loyalty and honesty in accordance with the applicable provisions of their codes of ethics and professional responsibility.

18

63.     During the course of their representation of Plaintiffs, Defendants each made numerous knowingly or negligently false affirmative representations and intentional or negligently misleading omissions of material fact to Plaintiffs with respect to the Tax Strategies, including but not limited to:

a.      Recommending and utilizing unsupported income allocations;

b.      Recommending and utilizing unsupported and substantial management fee allocations among affiliated entities;

c.      Recommending and utilizing unsupported expense allocations;

d.      Recommending and utilizing  affiliated company payables and receivables that could never be repaid;

e.      Recommending and utilizing entity structures with no books, records or purpose;

f.      Recommending and utilizing corporations, ESOPs, Roth IRAs, and partnerships, all designed to avoid income tax without sufficient legal, business or factual support;

g.      Failing to adequately or competently implement, perform and institute the steps, actions, documents, books or records that were necessary or appropriate to accomplish the Tax Strategies;

h.      Providing the tax returns to the Plaintiffs only one to two days prior to the final extension due date thereby allowing the Plaintiffs no time to review the tax returns, question the action taken on the tax returns or the tax advice received from the Defendants or to understand the numbers reported by the Defendants on the tax returns;

i.      Making and endorsing the statements contained in their oral advice and tax returns prepared by the Defendants and other services and advice rendered or which should have been rendered in connection with the Tax Strategies.

64.     Plaintiffs fully performed their obligations to the Defendants under their contracts.

65.     In reasonable reliance on said Defendants' false representations and misleading omissions regarding the Tax Strategies, Plaintiffs paid thousands of dollars to Defendants for tax, accounting and legal advice relating to the Tax Strategies, paid thousand of dollars in additional

expenses to execute the Tax Strategies, failed to avail themselves of legitimate tax savings opportunities, filed federal and state tax returns that reflected the Tax Benefits resulting from the Tax Strategies, and did not file amended returns.  But for said Defendants' intentional or negligent misrepresentations and material omissions described above and Defendants' well-known reputations as tax and accounting experts, Plaintiffs would never have hired Defendants for advice on the Tax Strategies, engaged in the Tax Strategies, claimed the purportedly resulting Tax Benefits on their income tax returns resulting from the Tax Strategies, signed and filed their tax returns as prepared by Grant Thornton or in reliance on said Defendants' advice, and would have filed amended returns and availed themselves of legitimate tax savings opportunities.

66.    After discovering said Defendants' misrepresentations, Plaintiffs incurred and will continue to incur substantial additional costs in hiring new tax, accounting and legal advisors to rectify damages caused by implementing the Tax Strategies.

67.    As a result of Defendants' conduct set forth herein, Plaintiffs have suffered injury in that (a) they have paid Defendants thousands of dollars for advice and tax return preparation relating to the Tax Strategies; (b) have incurred or will incur millions of dollars in taxes, penalties and interest as a result of implementing the Tax Strategies; (c) have and will continue to incur substantial additional costs in hiring new tax, accounting and legal advisors to rectify the damages caused by implementing the Tax Strategies; and (d) have foregone legitimate tax savings opportunities.

68.    Due to the wrongful concealment by the Defendants and each of them, the Plaintiffs did not discover, nor could they reasonably have discovered, with the exercise of reasonable diligence, the facts underlying the claims for relief asserted herein until shortly before the execution of the original tolling agreement between the Plaintiffs, Grant Thornton and Davison set forth at Exhibit A and B.  Due to the complex nature of the Defendants' wrongful

negligent, reckless, improper, extreme and wanton actions and omissions relating the Ta Strategies scheme, Plaintiffs have continued to learn of additional facts supporting its claim during the tolling period.

69.     As a proximate cause of the foregoing, Plaintiffs have been injured in an amount to be proved but believed to be at least $1 million.

## FOURTH CLAIM
### (Professional Negligence)

70.     Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1 through 69, inclusive, as if fully set forth herein.

71.     Plaintiffs entered into oral and written agreements with the Defendants to provide Plaintiffs with professionally competent tax advice and services, legal advice and services, accounting advice and services, and tax return preparation services, to exercise the applicable standard of care, loyalty and honesty, and to comply with all applicable rules of ethics and professional conduct.

72.     Plaintiffs fully performed all of their contractual obligations to the Defendants.

73.     During the course of their representation of Plaintiffs, the Defendants each made numerous knowingly or negligently false affirmative representations and intentional or negligently misleading omissions of material fact to Plaintiffs, including but not limited to:

a.     Recommending and utilizing unsupported income allocations;

b.     Recommending and utilizing unsupported and substantial management fee allocations among affiliated entities;

c.     Recommending and utilizing unsupported expense allocations;

d.     Recommending and utilizing  affiliated company payables and receivables that could never be repaid;

e.     Recommending and utilizing entity structures with no books, records or purpose;

f.  Recommending and utilizing corporations, ESOPs, Roth IRAs, limited liability companies, and partnerships, all designed to avoid income tax without sufficient legal, business or factual support;

g.  Failing to adequately or competently implement, perform and institute the steps, actions, documents, books or records that were necessary or appropriate to accomplish the Tax Strategies;

h.  Providing the tax returns to the Plaintiffs only one to two days prior to the final extension due date thereby allowing the Plaintiffs no time to review the tax returns, question the action taken on the tax returns or the tax or other advice received from the Defendants or to understand the numbers reported by the Defendants on the tax returns;

i.  Making and endorsing the statements contained in their oral advice and tax returns prepared by the Defendants and other services and advice rendered or which should have been rendered in connection with the Tax Strategies.

74.   The Defendants ignored their obligations and instead provided Plaintiffs with advice that said Defendants either knew or should have known to be wrong, improper, negligent, reckless, extreme, abusive and wanton.

75.   As a result of said Defendants' conduct set forth herein, Plaintiffs have suffered injury in that (a) they have paid Defendants thousand of dollars in fees; (b) have incurred or will incur millions of dollars in taxes, penalties and interest as a result of implementing the Tax Strategies; (c) have and will continue to incur substantial additional costs in hiring new tax, accounting and legal advisors to rectify the damages caused by implementing the Tax Strategies; and (d) have foregone legitimate tax savings opportunities.

76.   Due to the wrongful concealment by the Defendants and each of them, the Plaintiffs did not discover, nor could they reasonably have discovered, with the exercise of reasonable diligence, the facts underlying the claims for relief asserted herein until shortly before the execution of the original tolling agreement between the Plaintiffs, Grant Thornton and Davison set forth at Exhibit A and B. Due to the complex nature of the Defendants' wrongful actions and omissions relating to the Tax Strategies, Plaintiffs have continued to learn of

additional facts supporting its claim during the tolling period.

77.    As a proximate cause thereof, Plaintiffs have been injured in an amount to be proved but believed to be at least $1 million.

## FIFTH CLAIM
### (Declaratory Judgment)

78.    Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1 through 77, inclusive, as if fully set forth herein.

79.    The IRS has commenced audits and investigations of Plaintiffs' tax returns for the years 1998 through 2001. On information and belief, Plaintiffs understand they will incur taxes and interest and will likely incur substantial penalties, assessed by the IRS and state tax authorities, as a consequence of Plaintiffs engaging in the Tax Strategies, as advised by the Defendants, and will incur additional professional fees to rectify the damages caused by said Defendants' wrongdoing.

80.    The Defendants are legally responsible for such taxes, interest, penalties and the professional fees incurred by Plaintiffs on account of said Defendants' breach of fiduciary duty, fraud, negligent misrepresentation, malpractice, and breach of contract, as set forth above.

81.    As a result of Defendants' conduct set forth herein, Plaintiffs have suffered injury in that (a) they have paid Defendants thousand of dollars in fees; (b) have incurred damages or will incur millions of dollars in taxes and interest as a result of implementing the Tax Strategies and may incur substantial penalties; (c) have and will continue to incur substantial additional costs in hiring new tax, accounting and legal advisors to rectify the damages caused by implementing the Tax Strategies; and (d) have foregone legitimate tax savings opportunities.

82.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that Defendants are liable to Plaintiffs for such taxes, penalties, interest, professional fees, and other damages and relief set forth herein.

83.     Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the Defendants' engagement letters are void and unenforceable.

## SIXTH CLAIM
### (Unethical, Excessive And Illegal Fees)

84.     Plaintiffs repeat and reallege each and every prior allegation in Paragraphs 1 through 83, inclusive, as if fully set forth herein.

85.     Irrespective of the merits of the tax, accounting and legal advice that the Defendants rendered to Plaintiffs, the fees that the Defendants charged the Plaintiffs are unethically excessive and in violation of AICPA Rules of Professional Conduct.  On information and belief, the Defendants charged at least 40 other clients the same or substantially similar fees for the same work and expended little, if any, additional time or effort in providing services and advice to Plaintiff for the Tax Strategies.

86.     Further, since the Defendants did not disclose information that they were required to disclose with respect to the Tax Strategies and its representation of Plaintiffs violated the applicable rules of ethics and professional conduct, their fee agreement with Plaintiffs set forth above and their fee agreement with Plaintiffs for the preparation of the Plaintiffs' tax returns are not enforceable.

87.     Due to the wrongful concealment by the Defendants and each of them, the Plaintiffs did not discover, nor could they reasonably have discovered, with the exercise of reasonable diligence, the facts underlying the claims for relief asserted herein until shortly before the execution of the original tolling agreement between the Plaintiffs, Grant Thornton and Davison set forth at Exhibit A and B.  Due to the complex nature of the Defendants' wrongful, negligent, reckless, improper, extreme and wanton actions and omissions, Plaintiffs have continued to learn of additional facts supporting its claim during the tolling period.

24

88.     Accordingly, Defendants must disgorge their fees paid by the Plaintiffs relating to the Tax Strategies.

## PRAYER FOR RELIEF

A.     On the First Claim (Breach of Fiduciary Duty), damages in an amount to be proved, but believed to be at least $1 million, plus punitive damages.

B.     On the Second Claim (Fraud), damages in an amount to be proved, but believed to be at least $1 million, plus punitive damages.

C.     On the Third Claim (Negligent Misrepresentation/Professional Malpractice), damages in an amount to be proved, but believed to be at least $1 million.

D.     On the Fourth Claim (Professional Negligence/Professional Malpractice), damages in an amount to be proved, but believed to be at least $1 million.

E.     On the Fifth Claim (Declaratory Judgment), a declaration that (a) Defendants are liable to Plaintiffs for any and all taxes, interest and penalties assessed against them by the IRS and/or state tax authorities resulting from Plaintiffs' participation in the Tax Strategies and for all additional professional fees incurred by Plaintiffs to engage in the Tax Strategies and to rectify the damages caused by the implementation of the Tax Strategies Defendants' wrongdoing and also for tax savings opportunities lost as a result of Defendants' conduct, punitive damages, plus attorneys' fees and costs; and (b) the Defendants' engagement letters are void and unenforceable;

F.     On the Sixth Claim (Unethical, Excessive and Illegal Fees), disgorgement by the Defendants to Plaintiffs of all fees paid by the Plaintiffs to the Defendants with respect to the Tax Strategies.

G.     Determining that this action is properly maintainable as a class action pursuant to Fed.R.Civ.P. Rule 23.

H.      Certifying the Plaintiffs as Class representatives and their counsel as Class counsel.

I.      Attorneys' fees, costs, disbursements, interest, and such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury on all issues so triable.

> DAVID W. WILLIAMS; SUSAN D.
> WILLIAMS; JOHN A. WILLIAMS; CHERYL
> A. WILLIAMS; DRAKE-WILLIAMS STEEL,
> INC.; D.W. SERVICES, INC.;
> FABRISERVICE, INC.; J.W. SERVICES,
> INC.; STRUCTURAL STEEL SERVICES,
> INC.; JFH REALTY ADMINISTRATIVE
> SERVICES, INC.; FABRI-SERVICES, INC.
> (n/k/a COMPLETE STEEL SERVICES,
> INC.); FABSTEEL, INC.; WILLIAMS
> FAMILY FARM I, LC; WILLIAMS FAMILY
> FARM II, LC; WILLIAMS FAMILY FARM
> III, LLC; WILLIAMS FAMILY FARM IV,
> LLC; on behalf of themselves and others
> similarly situated, and class

> By: _John F. Thomas_
> John F. Thomas, NE #14181
> Edward G. Warin, NE #14396
> J. Scott Paul, NE #16635
> McGrath North Mullin & Kratz, PC LLO
> Suite 3700 First National Tower
> 1601 Dodge St.
> Omaha, Nebraska 68102
> (402) 341-3070
> (402) 341-0216 fax
> spaul@mnmk.com

> and

26

JOHN WILLIAMS, CHERYL WILLIAMS,
STRUCTURAL STEEL SERVICES, INC.,
JFH REALTY ADMINISTRATIVE
SERVICES, INC., and class

By: _____
     Andrew D. Strotman, NE #18406
     Kevin J. Schneider, NE #18898
     Cline Williams Wright Johnson
     & Oldfather
     1900 US Bank Building
     233 S. 13th Street
     Lincoln, NE 68508-2095
     (402) 474-6900
     (402) 474-5939 fax

27

EXHIBIT

A

PENGAD 800-631-6989

## TOLLING AGREEMENT

**WHEREAS,** DRAKE-WILLIAMS STEEL, INC.; JOHN WILLIAMS and LYNN WILLIAMS, husband and wife; CHERYL WILLIAMS, an individual; DAVID AND SUSAN WILLIAMS, husband and wife; D.W. SERVICES, INC.; J.W. SERVICES, INC.; FABRISERVICE, INC.; STRUCTURAL STEEL SERVICES, INC.; JFH REALTY ADMINISTRATIVE SERVICES, INC.; FABRI-SERVICES, INC. (n/k/a COMPLETE STEEL SERVICES, INC.); FABSTEEL, INC.; WILLIAMS FAMILY FARMS I, LC; WILLIAMS FAMILY FARMS II, LC; WILLIAMS FAMILY FARMS III, LLC; WILLIAMS FAMILY FARMS IV, LLC; AND WILLIAMS FAMILY FARMS V, LLC (collectively hereinafter referred to as "Claimants") may have claims against Allen Davison and the firm of Grant Thornton LLP pertaining to their representation and advice regarding income tax planning and compliance, business planning and implementation, record keeping and financial reporting planning and compliance, and all other services rendered to or on behalf of the claimants. Notwithstanding the provisions of the preceding sentence or any provision of this Tolling Agreement, Allen Davison and the firm of Grant Thornton LLP deny that the Claimants have any basis to make any such claims.

In consideration of the Claimants forbearing from taking legal action at this time against Allen Davison and Grant Thornton LLP (collectively the "Accountants") and subject to the limitations herein set forth, the Accountants hereby waive any defense by way of statute of limitations as to any claim or claims that may become barred by the statute of limitations during the period from and after June 13, 2003 until December 31, 2003. This waiver shall not be construed as a waiver of any statute of limitations defense to any claim has already become barred by the statute of limitations prior to June 13, 2003, or becomes barred by the statute of

Page 1 of 5

limitations after December 31, 2003. The Accountants hereby specifically reserve the right to assert any statute of limitations defense to any claim asserted by the Claimants which may have been barred by the statute of limitations prior to June 13, 2003, or which may become barred by the statute of limitations after December 31, 2003. Any action brought by the Claimants against the Accountants between the date of this Agreement and December 31, 2003, shall be deemed to have been filed on June 13, 2003, for the purpose of determining the applicability of any statute of limitations defense asserted by the Accountant. The Accountants specifically reserve all other defenses and claims both at law and in equity to any action brought by the Claimants as well as any separate claims or actions against the Claimants except as otherwise specifically set forth in this Agreement.

DATED: _____, 2003          DRAKE-WILLIAMS STEEL, INC.

                                   By: _____
                                   Its: _____

DATED: _____, 2003          _____
                                   JOHN WILLIAMS

DATED: _____, 2003          _____
                                   LYNN WILLIAMS

DATED: _____, 2003          _____
                                   CHERYL WILLIAMS

DATED: _____, 2003          _____
                                   DAVID WILLIAMS

Page 2 of 5

DATED: _____, 2003         FABSTEEL, INC.

                                   By: _____
                                   Its: _____

DATED: _____, 2003         WILLIAMS FAMILY FARMS I, LC

                                   By: _____
                                   Its: _____

DATED: _____, 2003         WILLIAMS FAMILY FARMS II, LC

                                   By: _____
                                   Its: _____

DATED: _____, 2003         WILLIAMS FAMILY FARMS III, LLC

                                   By: _____
                                   Its: _____

DATED: _____, 2003         WILLIAMS FAMILY FARMS IV, LLC

                                   By: _____
                                   Its: _____

DATED: _____, 2003         WILLIAMS FAMILY FARMS V, LLC

                                   By: _____
                                   Its: _____

Page 4 of 5

DATED: _June 11_, 2003

**GRANT THORNTON LLP**

By: _____

Its: _Associate General Counsel_

DATED: _June_, 2003

**ALLEN DAVISON, an individual**

Page 5 of 5



EXHIBIT

B

# TOLLING AGREEMENT

**WHEREAS,** DRAKE-WILLIAMS STEEL, INC.; JOHN WILLIAMS and LYNN WILLIAMS, husband and wife; CHERYL WILLIAMS, an individual; DAVID AND SUSAN WILLIAMS, husband and wife; D.W. SERVICES, INC.; J.W. SERVICES, INC.; FABRISERVICE, INC.; STRUCTURAL STEEL SERVICES, INC.; JFH REALTY ADMINISTRATIVE SERVICES, INC.; FABRI-SERVICES, INC. (n/k/a COMPLETE STEEL SERVICES, INC.); FABSTEEL, INC.; WILLIAMS FAMILY FARMS I, LC; WILLIAMS FAMILY FARMS II, LC; WILLIAMS FAMILY FARMS III, LLC; WILLIAMS FAMILY FARMS IV, LLC; AND WILLIAMS FAMILY FARMS V, LLC (collectively hereinafter referred to as "**Claimants**") may have claims against Allen Davison and the firm of Grant Thornton LLP pertaining to their representation and advice regarding income tax planning and compliance, business planning and implementation, record keeping and financial reporting planning and compliance, and all other services rendered to or on behalf of the claimants. Notwithstanding the provisions of the preceding sentence or any provision of this Tolling Agreement, Allen Davison and the firm of Grant Thornton LLP deny that the Claimants have any basis to make any such claims.

In consideration of the Claimants forbearing from taking legal action at this time against Allen Davison and Grant Thornton LLP (collectively the "**Accountants**") and subject to the limitations herein set forth, the Accountants hereby waive any defense by way of statute of limitations as to any claim or claims that may become barred by the statute of limitations during the period from and after June 13, 2003 until December 31, 2004. This waiver shall not be construed as a waiver of any statute of limitations defense to any claim has already become barred by the statute of limitations prior to June 13, 2003, or becomes barred by the statute of

limitations after December 31, 2004. The Accountants hereby specifically reserve the right to assert any statute of limitations defense to any claim asserted by the Claimants which may have been barred by the statute of limitations prior to June 13, 2003, or which may become barred by the statute of limitations after December 31, 2004. Any action brought by the Claimants against the Accountants between the date of this Agreement and December 31, 2004, shall be deemed to have been filed on June 13, 2003, for the purpose of determining the applicability of any statute of limitations defense asserted by the Accountant. The Accountants specifically reserve all other defenses and claims both at law and in equity to any action brought by the Claimants as well as any separate claims or actions against the Claimants except as otherwise specifically set forth in this Agreement.

DATED: _____, 2003      DRAKE-WILLIAMS STEEL, INC.

By: _____
Its:_____

DATED: _____, 2003      _____
JOHN WILLIAMS

DATED: _____, 2003      _____
LYNN WILLIAMS

DATED: _____, 2003      _____
CHERYL WILLIAMS

DATED: _____, 2003      _____
DAVID WILLIAMS

DATED: _____, 2003

_____
SUSAN WILLIAMS

DATED: _____, 2003

D.W. SERVICES, INC.

By: _____
Its:_____

DATED: _____, 2003

J.W. SERVICES, INC.

By: _____
Its:_____

DATED: _____, 2003

FABRISERVICE, INC.

By: _____
Its:_____

DATED: _____, 2003

STRUCTURAL STEEL SERVICES, INC.

By: _____
Its:_____

DATED: _____, 2003

JFH REALTY ADMINISTRATIVE SERVICES, INC.

By: _____
Its:_____

DATED: _____, 2003

FABRI-SERVICES, INC.
(n/k/a COMPLETE STEEL SERVICES, INC.)

By: _____
Its:_____

DATED: _____, 2003          FABSTEEL, INC.


                                   By: _____
                                   Its:_____


DATED: _____, 2003          WILLIAMS FAMILY FARMS I, LC


                                   By: _____
                                   Its:_____


DATED: _____, 2003          WILLIAMS FAMILY FARMS II, LC


                                   By: _____
                                   Its:_____


DATED: _____, 2003          WILLIAMS FAMILY FARMS III, LLC


                                   By: _____
                                   Its:_____


DATED: _____, 2003          WILLIAMS FAMILY FARMS IV, LLC


                                   By: _____
                                   Its:_____


DATED: _____, 2003          WILLIAMS FAMILY FARMS V, LLC


                                   By: _____
                                   Its:_____

DATED: _Dec. 4_ , 2003          **GRANT THORNTON LLP**

By: _____

Its: _____

DATED: _12-12_ , 2003          _____

**ALLEN DAVISON**, an individual